IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Betty Pruitt,<br><br>        Plaintiff,<br><br>v.<br><br>Nancy A. Berryhill, Acting Commissioner of Social Security,[1]<br><br>        Defendant. | C/A No. 0:16-3348-TMC-PJG<br><br>**REPORT AND RECOMMENDATION** |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Betty Pruitt, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the named defendant because she became the Acting Commissioner of Social Security on January 23, 2017.

Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the Administrative Law Judge ("ALJ") to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform her past relevant work; and

(5) whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[2] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 404.1520(h).

**ADMINISTRATIVE PROCEEDINGS**

In November 2012, Pruitt applied for DIB, alleging disability beginning August 30, 2008. Pruitt's application was denied initially and upon reconsideration, and she requested a hearing before an ALJ. A hearing was held on December 12, 2014, at which Pruitt appeared and testified, and was represented by Jason L. Sturkie, Esquire. During the hearing, Pruitt amended her onset date to September 22, 2012. After hearing testimony from a vocational expert, the ALJ issued a decision on February 5, 2015 finding that Pruitt was not disabled from December 22, 2012[3] through the date last insured of December 31, 2013. (Tr. 26-33.)

Pruitt was born in 1959 and was fifty-three years old on her amended disability onset date. (Tr. 32.) She has a high school education and has past relevant work experience as an aircraft inspector. (Tr. 174-75.) Pruitt alleged disability due to depression, arthritis, high blood pressure, a fractured foot, an open hand wound, a pin in her left hand, and alcoholism. (Tr. 173.)

In applying the five-step sequential process, the ALJ found that Pruitt had not engaged in substantial gainful activity since her alleged onset date through her date last insured of December 31, 2013. The ALJ also determined that, through the date last insured, Pruitt's left dorsal wrist injury; and left thumb fracture, status-post open reduction internal fixation, were severe impairments. However, the ALJ found that, through the date last insured, Pruitt did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that, through the date last insured, Pruitt retained the residual functional capacity to

---

[3] The ALJ incorrectly noted throughout his decision that Pruitt's alleged onset date was December 22, 2012 rather than her actual amended onset date of September 22, 2012.



perform medium work as defined in 20 CFR 404.1567(c) except that the use of hand controls can be performed frequently on the left. She can never climb ladders, ropes, or scaffolds, but can occasionally crawl. The claimant can frequently climb ramps and stairs, and can constantly balance, stoop, kneel, and crouch. She can occasionally handle and frequently finger with the dominant left hand. She can occasionally be exposed to unprotected heights.

(Tr. 30.) The ALJ found that, through the date last insured, Pruitt was unable to perform any past relevant work, but that considering Pruitt's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Pruitt could have performed. Therefore, the ALJ found that Pruitt was not disabled from the alleged onset date through the date last insured of December 31, 2013.

The Appeals Council granted Pruitt's request for review on June 28, 2016. On August 18, 2016 the Appeals Council issued a decision adopting all of the ALJ's findings and conclusions except that it found Pruitt not disabled from September 22, 2012—Pruitt's correct amended alleged onset date—through the date last insured. (Tr. 4-7.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d

at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Pruitt raises the following issues for this judicial review:

I. The ALJ committed reversible error by not considering Pruitt's borderline age as of the date last insured and by not explaining how Pruitt's borderline age was considered in making the benefit determination.

II. The ALJ erred in not giving proper weight to Pruitt's testimony regarding her pain, which is directly supported by findings from her treating physicians.

(Pl.'s Br., ECF No. 14.)

## DISCUSSION

**A.      Application of the Medical-Vocational Guidelines**

Pruitt first argues that the ALJ erred in failing to find Pruitt disabled in light of the fact that a little less than eight months after Pruitt's date last insured she reached the age of fifty-five. Pruitt argues that based on the medical-vocational guidelines, located at 20 C.F.R. Part 404, Subpart P, appendix 2 (the "Grids"), she would be found to be disabled with a restriction to light work. Therefore, Pruitt, relying in part on 20 C.F.R. § 404.1563, argues that the ALJ should have considered the older age category and found Pruitt disabled.

The regulations establish particular age categories to consider in combination with an individual's residual functional capacity, including: (1) a younger person (under age 50), (2) a person closely approaching advanced age (age 50-54), and (3) a person of advanced age (age 55 or older). 20 C.F.R. § 404.1563(c)-(e). Section 404.1563(b) instructs claimants that

PJG

> [w]hen we make a finding about your ability to do other work under § 404.1520(f)(1), we will use the age categories in paragraphs (c) through (e) of this section. We will use each of the age categories that applies to you during the period for which we must determine if you are disabled. We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 404.1563(b). However, "an ALJ is not *required* to use an older age category, even if the claimant is within a few days or a few months of reaching an older age category." Lockwood v. Comm'r Soc. Sec. Admin., 616 F.3d 1068, 1071 (9th Cir. 2010) (emphasis in original).

In this case, Pruitt was seven and a half months shy of advanced age as of her date last insured (December 31, 2013), which contrary to Pruitt's assertion does not present a "borderline situation" as she was not within a few months of reaching an older category. Although Pruitt relies on a few older, out of circuit, district court cases to suggest that such a situation could be a borderline situation, the court finds more persuasive more recent opinions from district courts within the Fourth Circuit. See, e.g., Handley v. Colvin, Civil No. TMD 13-991, 2014 WL 4467822, at *10 (D. Md. Sept. 8, 2014) (stating that "[t]he borderline range falls somewhere around six months from the older age category"); Ash v. Colvin, No. 2:13-CV-47, 2014 WL 1806771, at *6 (N.D.W. Va. May 7, 2014) ("A review of case law indicates that, generally, claimants who are within six months from the next age category are routinely considered borderline.") (collecting cases); Amick v. Colvin, C/A No. 5:12-0922, 2013 WL 4046349, at *4 n.1 (S.D.W. Va. Aug. 8, 2013) ("Generally, it appears that Claimants are in a borderline situation when they are about six months from an older age category.") (collecting cases); Dunn v. Astrue, No. 7:11-CV-132-FL, 2012 WL 7748800, at *8 (E.D.N.C. Aug. 9, 2012) (finding a ALJ correctly classified the claimant as an individual closely approaching advanced age where the claimant was seven months shy of the advanced age category) (Report and

Recommendation, adopted by sub nom., Dunn v. Colvin, 2013 WL 1091075 (E.D.N.C. Mar. 15, 2013)); cf. France v. Apfel, 87 F. Supp. 2d 484, 492 (D. Md. 2000) (remanding where the claimant was five months away from the next older age category). Accordingly, the ALJ did not err by considering Pruitt in the "closely approaching advanced age" category instead of the "advanced age" category. Moreover, the court finds that "the ALJ did not 'apply the age categories mechanically' because the ALJ 'evaluat[ed] the overall impact of all the factors of [Pruitt's] case' when the ALJ relied on the testimony of a vocational expert before []he found [Pruitt] was not disabled." Lockwood, 616 F.3d at 1072 (quoting 20 C.F.R. § 404.1563(b)) (certain alterations in original). Accordingly, remand is not warranted on this basis.

**B.    Subjective Complaints**

Pruitt next argues that the ALJ erred in failing to properly evaluate Pruitt's testimony regarding her pain. With regard to subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig, 76 F.3d at 594. The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Id. (internal quotation omitted). During the second step the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects her ability to work." Id. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons

*PJG*

for that weight." SSR 96-7p, 1996 WL 374186, at *4.[4] "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

(i) Your daily activities;
(ii) The location, duration, frequency, and intensity of your pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

---

[4] The court notes that effective March 28, 2016, SSR 96-7p was superseded by SSR 16-3p, 2016 WL 1119029. See 2016 WL 1237954 (correcting the effective date of SSR 16-3p to read March 28, 2016). However, because this application was adjudicated prior to the effective date of SSR 16-3p, the court analyzes Pruitt's allegations under SSR 96-7p. See Savage v. Berryhill, C/A No. 5:16-1138-KDW, 2017 WL 3124177, n.2 (D.S.C. July 24, 2017) (applying SSR 96-7p under the same circumstances).

In this case, the ALJ summarized Pruitt's testimony as follows:

> The claimant testified that she injured her dominant, left hand in September 2012. She reported shattering her left thumb. She received reconstructive surgery on the hand, and completed physical therapy. The claimant reported constant pain in the knuckles and thumb due to arthritis. She rated her pain an 8 on a scale of 0-10, and takes Moloxocan, Tylenol, and Aleve. She also uses heat daily for approximately two hours. The claimant reported lack of grip strength with the left hand, and "locking" of the fingers 2-3 times per week. She cannot close her hand, but can hold a pen. The claimant also reported problems with her right hip, but no treatment yet. The claimant testified that she lives alone. Her son assists with grocery shopping and heavy lifting.

(Tr. 30.)

The ALJ found that Pruitt's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 31.) In support of this finding, the ALJ first discussed the medical evidence and found the following:

> The longitudinal medical evidence of record does not fully support the claimant's allegation of disability. The claimant sustained a degloving injury to her left wrist, left elbow wound, and left thumb base fracture in September 2012. She underwent a split thickness graft to the wrist and ORIF of the fracture. Records in October 2012 showed a partially failed skin graft and decreased sensation to light tough in the left wrist. On October 24th, progress records indicated that the claimant's fracture was stable and "healing nicely." There was decreased range of motion of the fingers. Sensation was good to light touch in the medial, radial, and ulnar nerve distribution. Records on November 14th noted that her fracture was healed. She indicated that her pain was satisfactorily controlled with Lortab (Exhibits 3F, 4F, 5F).
>
> The claimant underwent a consultative medical evaluation with Dr. Melissa Richardson in June 2013. The claimant had a scar over the dorsum of the left hand and wrist region that appeared to be well healed, with some contracture of the scar tissue. She had full extension of all of the fingers, but the index finger lagged in flexion. With forming a grip, the infected finger did not flex into the palm. The claimant was able to fill out forms with her left hand, and has very legible handwriting. She was diagnosed with a history of a dorsal wrist degloving injury

PJG

with thumb fracture and reduced function of the left hand, a history of alcoholism, and a remote history of a left foot fracture (Exhibit 8F).

(Tr. 30-31.) The ALJ also stated that he found her hearing testimony less than fully credible, observing that Pruitt "presented at the hearing cradling her left hand, but when she described her 2011 assembly work, she demonstrated range of motion of the left wrist and fingers that was inconsistent with her alleged limitations, and were more consistent with her presentation at the her June 2013 exam with Dr. Richardson (Exhibit 8F)." (Tr. 31.) The ALJ observed that Pruitt has not received any treatment for her alleged right hip pain, and despite testifying to daily pain, "records showed that her pain was controlled with Lortab (Exhibit 5F)." (Id.) With regard to Pruitt's left hand, the ALJ reiterated that Pruitt's "examination with Dr. Richardson showed full extension of all fingers but the left index finger, the ability to fill out forms with legible handwriting, and almost a full grip (Exhibit 8F)." (Id.) Finally, the ALJ observed that Pruitt "able to make her bed, do laundry, care for her cat, . . . shop for groceries, and use her computer (Exhibit 4E)" and found that Pruitt's "wide range of activities of daily living do not support a finding of disability." (Id.)

In conclusion and after discussing the opinion evidence, the ALJ stated:

In sum, the above residual functional capacity assessment is supported by evidence of full recovery from her fracture, and intact fine and gross manipulation in the left hand. Manipulative limitations were based on evidence of some contracture of scar tissue on the left hand, and lack of range of motion of the left index finger. Postural limitations were added to address the claimant's testimony of undiagnosed hip pain.

(Id.)

Pruitt challenges the ALJ's evaluation of Pruitt's subjective complaints, arguing that the ALJ failed to perform a real analysis of the applicable factors. Pruitt argues that the ALJ failed to acknowledge medical records from Spring 2013 from Pruitt's treating physicians and physical therapists, noting stiffness and pain in her left hand and that surgery would not likely help, and

instead focused on the results of a June 2013 consultative examination.[5] (See Pl.'s Br. at 19-20, ECF No. 14 at 19-20) (citing Tr. 400, 402-03, 410). Pruitt also argues that the ALJ mischaracterized Pruitt's testimony regarding her activities of daily living. For example, Pruitt asserts that the ALJ failed to acknowledge that Pruitt stated that she is unable to carry or lift items with her left hand and often drops things because she is unable to grip with her left hand and that the ALJ incorrectly stated that Pruitt testified that her left hand locks up two to three times per week when Pruitt stated that it occurred at least three to four times per week. Pruitt points out that she testified that although she lives alone, her son comes over to help her every other weekend and any other time she needs it and that he helps her with her grocery shopping. Pruitt also argues that she did not testify as to any specific tasks she is able to perform to care for her cat.

Contrary to Pruitt's arguments, the court finds that remand is not warranted to further consider Pruitt's subjective complaints. Even assuming without deciding that the ALJ's characterization of all of Pruitt's daily activities was not entirely consistent with her testimony, the court observes that this was one factor among several others that the ALJ properly considered. See 20 C.F.R. § 404.1529(c)(3). Further, after carefully considering Pruitt's arguments and the record in this matter, the court finds that Pruitt has failed to demonstrate that the ALJ's evaluation of Pruitt's subjective complaints is unsupported by substantial evidence or controlled by an error of law. See Craig, 76 F.3d at 589 (defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance" and stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its]

---

[5] Pruitt also summarily argues that in doing this the ALJ also violated the treating physician rule.



judgment for that of the [Commissioner]"); Blalock, 483 F.2d at 775 (indicating that regardless of whether the court agrees or disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence). The ALJ's decision reflects careful consideration of the medical evidence and the limitations stemming from Pruitt's impairments. Contrary to Pruitt's summary argument, the court finds that Pruitt has failed to demonstrate that the ALJ improperly considered any of the medical evidence or overlooked or improperly weighed any medical opinions. (See generally Def.'s Br. 13-16, ECF No. 17 at 13-16.) Further, the ALJ did not find that Pruitt was pain free or that she had no limitations from her left hand. Rather, the ALJ recognized limitations stemming from Pruitt's left hand in reducing Pruitt's residual functional capacity; however, the ALJ found based on the evidence presented that Pruitt was not precluded from all use of her left hand. Thus, while Pruitt may point to records indicating that Pruitt reported pain and stiffness was noted in her left hand and the Commissioner may be able to point to records where Pruitt indicated that she was experiencing no pain, Pruitt has simply failed to demonstrate that the ALJ's evaluation of her subjective complaints with regard to her left hand is unsupported by substantial evidence. As stated above, the court may not substitute its judgment for the Commissioner's and finds that the ALJ's conclusions are within the bounds of the substantial evidence standard. See Craig, 76 F.3d at 595 (stating that a claimant's subjective complaints of pain itself or its severity "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers"); see also Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints).

**RECOMMENDATION**

For the foregoing reasons, the court finds that Pruitt has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

December 21, 2017
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).